UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO. 3:14-cv-00895-TJC-MCR

THOMAS A. TRAVER and
REGINA LIST TRAVER,

        Plaintiffs,

vs.

WELLS FARGO BANK, N.A. a/k/a
WELLS FARGO HOME MORTGAGE,

        Defendant.
_____/

## DEFENDANT, WELLS FARGO BANK, N.A.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' AMENDED COMPLAINT

Defendant, Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant"), hereby answers Counts and Two of Plaintiffs, Regina Traver and Thomas Traver's ("Plaintiffs") First Amended Civil Complaint in correspondingly numbered paragraphs, and asserts affirmative defenses as follows:

### Parties/Jurisdiction/Venue

1. Admitted for jurisdictional purposes only.

2. Admitted for jurisdictional purposes only.

3. Admitted for jurisdictional purposes only.

4. Admitted for jurisdictional purposes only.

### Facts Relating to Wells Fargo

5. Denied that Wells Fargo "entered into" an agreement with Fannie Mae on March 16, 2010, September 23, 2010, and September 30, 2010. Otherwise, admitted to the extent Exhibit 1 speaks for itself.

6. Admitted to the extent the SPA speaks for itself. Otherwise ,denied.

7. Admitted to the extent the SPA speaks for itself. Otherwise, denied.

8. Wells Fargo is without sufficient knowledge to admit the allegations in Paragraph 8; therefore denied.

9. Denied.

10. Admitted to the extent the Deed recorded in the Official Records of Duval County as OR BK 8936, PG 46 speaks for itself. Otherwise, denied.

11. Without knowledge as to the meaning of "interest" as used in Paragraph 11, therefore denied. The remaining allegations in Paragraph 11 are denied.

12. Admitted that HSBC Bank, USA, National Trust Company, as Trustee for the Holders of MASTR RePerforming Loan Trust 2006-1 ("HSBC Bank, as Trustee"), filed a foreclosure action against the real property located at 10515 Osprey Nest Drive West. Admitted that Wells Fargo, as servicer for HSBC Bank, as Trustee, was represented by Ronald Wolfe and Associates, P.L. ("Wolfe"). Admitted that Wolfe represented Wells Fargo as servicer for HSBC Bank, as Trustee regarding the real property, in Thomas Traver's Chapter 13 Bankruptcy cases filed in 2008, 2010, and 2012, in which he listed Wells Fargo as a secured creditor in connection with the real property. The remaining allegations state legal conclusions for which no response is required, therefore, these allegations are denied. The remainder of Paragraph 12 is denied.

13. Denied that Traver filed the Chapter Thirteen Bankruptcy case on May 4, 2012, "in response to the foreclosure." Without knowledge as to Thomas Traver's hopes regarding a loan modification, therefore the remaining allegations of Paragraph 13 are denied.

14. Admitted to the extent Exhibit 2 speaks for itself. Otherwise, denied.

15. Admitted to the extent Exhibit 3 speaks for itself. Otherwise, denied.

16. Admitted to the extent Paragraph 19 of Exhibit 3 speaks for itself. Without knowledge as to the meaning of the allegations that "[a]side from the mandate of the mortgage modification mediation order" the mediation process "was an extra judicial proceeding", therefore these allegations are denied. The remaining allegations of Paragraph 16 are unintelligible and appear to state legal conclusions, these are therefore denied.

17. Admitted to the extent Exhibit 4 speaks for itself. Otherwise, denied.

18. Admitted that Thomas Traver submitted loan modification applications to Wells Fargo. Without knowledge as to the "mortgage modification negotiations" and therefore denied. The remaining allegations are denied.

19. Admitted that Wells Fargo sent a letter to Thomas Traver via his attorney, Bryan Mickler, on January 24, 2013, offering a loan modification which required *inter alia*, Traver's consent to its terms and to perform certain other acts prior to receiving a loan modification agreement for the parties to execute. The remaining allegations of Paragraph 19 are denied.

20. Admitted that the proposed terms of the modification agreement outlined in the January 24, 2013 letter set forth, *inter alia*, a modified unpaid principal balance of $136,973.70, with a capitalized amount of $28,076.17, an interest rate of 3.25%, a post-modification principal and interest payment of $596.12, and a payment due date of April 1, 2013. D.E. 15, Ex. 5.

21. Admitted to the extent Exhibit 6 speaks for itself. Otherwise, denied.

22. Admitted to the extent Exhibit 7 speaks for itself. Otherwise, denied.

23. Without knowledge, therefore denied.

24. Denied that the March 4, 2013 letter was addressed to Mrs. Traver; denied that the letter notes that Wells Fargo would be able to provide the Travers with a "mortgage modification resolution" by March 21, 2013. Admitted that the March 4, 2013 letter acknowledges receipt of

an inquiry on the account, and that it states that Wells Fargo anticipates they would be able to provide resolution as to the inquiry by March 21, 2013. D.E. 15, Ex. 8. The remaining allegations are denied.

25. Denied that the March 20, 2013 letter is addressed to Mrs. Traver. Otherwise, admitted to the extent Exhibit 9 speaks for itself. D.E. 15, Ex. 9.

26. Admitted that Thomas Traver was provided with loan modification documents to sign in order to accept the modification offer. Denied that the January 24, 2013 letter was a final approval letter.

27. Denied that any documents were returned to Wells Fargo through the Fed Ex return envelope supplied by Wells Fargo. Without knowledge as to the remainder of the allegations, therefore denied.

28. Denied that the Travers were required to make any temporary payments and denied that any temporary payments were made. Admitted that Exhibits 11, 12, and 13 are copies of checks in the amount of $900.00 dated March 22, 2013, $899.00 dated April 30, 2013, and $880.00, dated May 31, 2013, respectively. Admitted that these checks were received and held in suspense by Wells Fargo. Otherwise, denied.

29. Admitted that the April 10, 2013 Order – drafted and submitted by Plaintiffs to the Bankruptcy Court for entry – was entered by the Bankruptcy Court and referred to the modification superseding "Claim No. Six". Denied that the Order rendered the Proof of Claim invalid, and denied that the Order "had the effect of bringing the mortgage current." Otherwise, denied.

30. Denied that Traver returned the completed loan modification agreement. Denied that Traver was required to make any "TPP monthly modification payments." All of the remaining allegations of Paragraph 30 are denied.

31. Denied that Traver was required to make any "TPP payments." Denied that Wells Fargo concealed its receipt or actions with respect to any payments made by Plaintiffs in any manner. Denied that any claims of privilege were copies of checks, or that any claims of privilege, were in any manner, improper. All of the remaining allegations of Paragraph 31 are denied.

32. Denied. Wells Fargo produced over six hundred pages of documents in the prior Federal Action, Bates-Numbered TRAVER-000001-0000618, including but not limited to, the payment history showing receipt of each of these payments, and specifically documents showing the dates of receipt of these payments and their location in "SUSPENSE" as indicated on TRAVER-000329 to TRAVER-000330. Wells Fargo also produced documents including TRAVER-000318 specifically discussing receipt of payments. *See* D.E. 35, Ex. B.

33. Admitted to the extent the state court foreclosure action docket speaks for itself. Otherwise, denied.

34. Admitted to the extent Exhibit 16 speaks for itself. Otherwise, denied.

35. Admitted to the extent Exhibit 17 speaks for itself. Otherwise, denied.

36. Admitted to the extent Exhibit 18 speaks for itself. Denied that Wolfe represented HSBC Bank in its individual capacity. Otherwise, denied.

37. Admitted to the extent Exhibit 18 speaks for itself. Otherwise, denied.

38. Denied that the Bankruptcy Court Order entered after the Discharge on March 7, 2013, should have been mentioned in the Motion to Cancel. Denied that Traver made any TPP

payments and denied that any TPP payments were required. Denied that Traver returned the executed loan modification agreement to Wells Fargo, and denied that there was any loan modification agreement in existence at the time the Motion to Cancel was filed. All remaining allegations state legal conclusions for which no response is required; these are therefore denied.

39. Admitted that Wolfe filed the Claim No. Six in the Bankruptcy Action. The remaining allegations of Paragraph 39 state legal conclusions for which no response is required, these are therefore denied.

40. Denied that the loan modification had made any "progress" or was finalized. Without knowledge as to the meaning of the remaining allegations of Paragraph 40, these are therefore denied.

41. Admitted to the extent the state court foreclosure action docket speaks for itself. Otherwise, denied.

42. Admitted to the extent the state court foreclosure action docket speaks for itself. Otherwise, denied.

43. Denied that the Travers accepted the modification agreement, and denied that the proposed modification agreement was a HAMP modification. Without knowledge as to the Travers' assumptions, and without knowledge as to the remaining allegations of Paragraph 43, these are therefore denied.

44. Denied that the Travers' valuations are accurate or based upon reliable sources. Without knowledge as to the allegations in the footnote regarding Mrs. Traver, these are therefore denied. The remaining allegations in Paragraph 44 are denied.

45. Denied that the Travers suffered any damages and/or expenses in moving and establishing a new residence.

## COUNT ONE (BREACH OF CONTRACT)

46. Admitted that Plaintiffs have filed the instant action; denied that it states a cause of action.

47. Admitted that this purports to be an action for breach of contract. Denied that it states a cause of action.

48. Wells Fargo incorporates by reference and adopts and reasserts its responses to Paragraphs 1 through 45 above.

49. Admitted to the extent the SPA speaks for itself. Otherwise, denied.

50. Admitted to the extent the SPA speaks for itself. Otherwise, denied.

51. Admitted to the extent the SPA speaks for itself. Otherwise, denied.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

56. Denied.

57. Without knowledge as to the Travers' assumptions, these allegations are therefore denied. The remaining allegations are denied.

58. To the extent Paragraph 58 states legal conclusions for which no response is required, these are denied. The remaining allegations of Paragraph 58 are denied.

59. Denied.

60. Denied.

61. Wells Fargo denies each and every allegation in Plaintiffs' "Wherefore" clause, and denies that Plaintiffs are entitled to the relief sought therein.

## COUNT TWO (FRAUDULENT INDUCEMENT)

62. Admitted that Plaintiffs have filed the instant action; denied that it states a cause of action.

63. Admitted that this purports to be an action for fraudulent inducement. Denied that it states a cause of action.

64. Wells Fargo incorporates by reference and adopts and reasserts its responses to Paragraphs 1 through 45 above.

65. Denied.

66. Denied.

67. Denied.

68. Denied.

69. Denied.

70. Denied.

71. Denied that the Travers accepted the loan modification offer. The remaining allegations of Paragraph 71 are also denied.

72. Denied.

73. Denied.

74. Paragraph 74 states legal conclusions for which no response is required, these are therefore denied.

75. Denied.

76. Denied.

77. Denied.

78. Wells Fargo denies each and every allegation in Plaintiffs' "Wherefore" clause, and denies that Plaintiffs are entitled to the relief sought therein.

**COUNT THREE (FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

Count Three was dismissed with prejudice by the Court's Order granting in part Wells Fargo's Motion to Dismiss (D.E. 32); therefore no response is required to Paragraphs 79-94.

# AFFIRMATIVE DEFENSES

## First Affirmative Defense

Plaintiffs fail to state a claim upon which relief may be granted, in that Plaintiffs have failed to allege sufficient facts supporting a plausible claim for breach of contract and/or fraudulent inducement.

## Second Affirmative Defense

Plaintiffs' claims are barred by res judicata because the claims in the instant action arise out of the same nucleus of operative fact and are based on the same factual predicate, as the claims in the state court foreclosure action. *See Nivia v. Nationstar Morg., LLC,* 2014 WL 4146889, *4 (S.D. Fla. Aug. 21, 2014) (finding that action for failure to modify mortgage loan was barred by res judicata because it arose out of the "same nucleus of operative fact" and was based on "same factual predicate" as state court foreclosure action). *Id.*, *4.

## Third Affirmative Defense

Plaintiffs' claim for breach of contract in Count One fails because Plaintiffs have failed to plead the existence of a valid and enforceable contract between the parties. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2007); *see also S. Internet Sys., Inc. ex rel Menotte v. Pritula*, 856 So. 2d 1125, 1127 (Fla. 4th DCA 2003) (noting that a contract is not valid and enforceable until all of the conditions precedent to its formation are satisfied).

## Fourth Affirmative Defense

Plaintiffs' claim for breach of contract fails because Plaintiffs failed to follow the required procedures to accept the loan modification offer, including failing to return the executed loan modification in the FedEx return envelope provided as they alleged they did. D.E. 15, ¶¶25-27; 52-57; ¶¶ 65-72. (A copy of the FedEx Certification of Business Records showing non-

use of the return envelope, and Wells Fargo's lack of receipt of same is attached hereto as Exhibit "A").

Fifth Affirmative Defense

Plaintiffs' claim for breach of contract fails because Plaintiffs allege that they did not sign the modification agreement until April 1, 2013, and therefore failed to follow the required procedures to accept the loan modification offer, by returning the executed loan modification agreement within five business days of receipt of the March 20, 2013 correspondence enclosing same.

Sixth Affirmative Defense

Plaintiffs' claim for breach of contract fails because Plaintiffs' claims are barred by the Florida Bank Statute of Frauds, in that, there is no existing contract signed by both the creditor and debtor as required. *See* Fla. Stat. § 687.0304(2) ("[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor."); *Vargas v. Deutsche Bank Nat. Trust Co.*, 104 So.3d 1156, 1168 (Fla. 3d DCA 2012) *reh'g denied*, Jan. 8, 2013 (stating that a loan modification is subject to the Banking Statute of Frauds).

Seventh Affirmative Defense

Plaintiffs' allegations regarding their payments toward the modification do not create an exception to the Statute of Frauds because the alleged payments cannot and do not refer exclusively to the proposed modification agreement; rather they refer to the same loan number as the original loan. *See, e.g.,* D.E. 15, Exs. 5, 9 & 11; *Vargas*, 104 So.3d at 1169 (holding that borrowers' "unilateral partial performance" in making payments purportedly toward the loan modification agreement "will not remove it from the statute of frauds in this case so as to make it

enforceable[]" because any payments made could not refer exclusively to the alleged modification as they were under an existing obligation to make payments under the Note and Mortgage).

### Eighth Affirmative Defense

Plaintiffs' claim for breach of contract fails to the extent it is based upon an alleged "trial period plan" or "TPP" because there is no TPP. Plaintiffs were offered a permanent modification that they failed to accept.

### Ninth Affirmative Defense

Plaintiffs' claim for breach of contract also fails to the extent it is based upon an alleged "trial period plan" or "TPP" because even if there was a TPP (there is not), as expressly held by the Eleventh Circuit, the TPP does not create a binding promise of a permanent modification. *See Bloch v. Wells Fargo Home Mortg.*, 755 F.3d 886 (11th Cir. 2014) ("a letter stating that [plaintiffs] might be eligible for a trial modification under HAMP was not 'a binding promise' that [they] would receive a loan modification ...."). *Id.* at 889.

### Tenth Affirmative Defense

Plaintiffs' claim for breach of contract also fails because the purported agreement was not a HAMP agreement. Even if the agreement was for a HAMP modification however, HAMP does not create, and cannot be enforced through, a private cause of action. *Bloch* 755 F.3d 886 ("[t]his Court has held there is no private cause of action under HAMP for a lender's refusal to permanently modify a loan."); *Miller v. Chase Home Finance, LLC*, 677 F.3d 1113, 1117 (11th Cir. 2012) (neither the Emergency Economic Stabilization Act, which created HAMP, nor HAMP "expressly creates a private right of action for borrowers against loan servicers."); *Nivia*, 2014 WL 4146889, *5 (collecting Eleventh Circuit and district court cases within the Eleventh

Circuit, and holding "since neither [HAMP nor TARP] provides a private right of action to individual borrowers against lenders, Plaintiffs, therefore, cannot assert a claim under either TARP or HAMP for Defendant's denial of their home loan modification.").

Eleventh Affirmative Defense

Plaintiffs' claim for breach of contract also fails because even if Plaintiffs had a private right of action under TARP or HAMP or any other government agreement with Wells Fargo (they do not), Plaintiffs have no right to enforce guidelines or an agreement that they are not parties to, nor intended third party beneficiaries of. *See Castillo v. Deutsche Bank Nat. Trust Co.*, 89 So.3d 1069, 1070 (Fla. 3d DCA 2012) (borrower lacked standing to assert claims based on trust's alleged failure to comply with pooling and servicing agreement because the borrower was "neither a party to nor a third-party beneficiary…";) *Zoher v. Chase Home. Fin.*, No. 10-14135-CIV, 2010 WL 4064798, *4-5 (S.D. Fla. Oct. 15, 2010) ("Borrowers may not attempt to enforce HAMP compliance as third-party beneficiaries of a contract."); *Gallagher v. DuPont*, 918 So. 2d 342, 347 (Fla. 5th DCA 2005) ("[a] person not a party to nor in privity with a contract has no right to enforce it.").

Twelfth Affirmative Defense

Plaintiffs' claim for breach of contract also fails because Plaintiffs do not have standing to enforce Defendants' alleged obligations under the SPA. *Porciello v. Bank of America, N.A.*, No. 8:14–CV–1511–T–17AEP, 2015 WL 899942, *4 (M.D.Fla. Mar. 3, 2015) (holding that borrower could not maintain claim for breach of contract as intended beneficiary of SPA based on alleged failure to provide permanent modification); *Phipps v. Wells Fargo Bank, N.A.*, 2011 WL 302803 (E.D.Cal. Jan. 27, 2011) (holding borrower was not third-party beneficiary of SPA and thus borrower failed to state a claim against lender for breach of contract for lender's failure

to consummate a modification of its home loan with borrower within the HAMP guidelines); *Escobedo v. Countrywide Home Loans*, No. 09cv1557, 2009 WL 4981618, at *3 (S.D. Cal. Dec. 15, 2009) ("[q]ualified borrowers are incidental beneficiaries of the [SPA] and do not have enforceable rights under the contract"); *Villa v. Wells Fargo Bank, N.A.*, No. 10CV81 DMS (WVG), 2010 WL 935680, at *3 (S.D. Cal. March 15, 2010) (same).

Thirteenth Affirmative Defense

Plaintiffs' claim in Count Two for fraudulent inducement is barred by the Florida Bank Statute of Frauds, which bars any claim that is "premised on the same conduct and representations that were insufficient to form a contract." *Bankers Trust v. Basciano*, 960 So. 2d 773, 778 (Fla. 5th DCA 2007); *see also Mark Andrew of the Palm Beaches, Ltd. v. GMAC Commercial Mortgage Corp.*, 265 S. Supp. 2d 366, 382 (S.D.N.Y 2003) (applying Florida law and holding that the banking statute of frauds bars negligent misrepresentation and fraud claims based on statements made during credit negotiations). Likewise, as a matter of law, there can be no reliance on a claimed agreement that is barred by the Statute of Frauds and therefore there can be no fraud.

Fourteenth Affirmative Defense

Plaintiffs' claim for fraudulent inducement fails because the January 24, 2013 letter was not a false statement as they claimed. D.E. 15, Ex. 5. As stated by the letter, a loan modification agreement for signatures would be provided, and such an agreement was provided. *Id.*, Ex. 9. Plaintiffs however, failed to return the executed agreement to Wells Fargo as required to accept the offer.

### Fifteenth Affirmative Defense

Plaintiffs' claim for fraudulent inducement fails because the claimed "reliance" in converting the Chapter 13 Bankruptcy to a Chapter 7 based on the January 24, 2013 letter, is an impossibility. The Chapter 13 Bankruptcy was dismissed on November 15, 2012 for Thomas Traver's failure to make Plan payments, and Traver elected to convert the Chapter 13 Bankruptcy into a Chapter 7 on November 21, 2012 by the filing of a Motion requesting the court to do so – long before he received any letter from Wells Fargo with a loan modification offer. A copy of the Bankruptcy Action docket is attached hereto as Exhibit "B".

### Sixteenth Affirmative Defense

Plaintiffs' claims for damages are barred by judicial estoppel because they claimed in the Bankruptcy Proceeding that the value of the same property was $100,000.00 less than they now claim, and because Thomas Traver abandoned this same property upon obtaining a Discharge of Debtor on March 7, 2013. A copy of the Discharge of Debtor is attached hereto as Exhibit "C".

### Seventeenth Affirmative Defense

Plaintiffs' claims are barred by unclean hands because they are based on unsupported theories, which are merely an attempt to avoid the consequences of their own failure to follow the required procedures to accept the loan modification offer.

### Attorney's Fee Claim

Pursuant to the statute under which Plaintiffs originally brought their claims, Wells Fargo will be entitled to its attorney's fees and costs in defending the instant action, if it prevails in this action.

        Michael K. Winston, Esquire
        Florida Bar No. 051403
        mwinston@cfjblaw.com
        Kristin A. Gore, Esquire
        Florida Bar No. 059090
        kgore@cfjblaw.com
        CARLTON FIELDS JORDEN BURT, P.A.
        525 Okeechobee Boulevard, Suite 1200
        West Palm Beach, FL 33401-6149
        Florida Bar No. 650331
        Telephone: (561) 659-7070
        Facsimile: (561) 659-7368

By: /s/ Kristin A. Gore
     Kristin A. Gore
     Florida Bar No. 059090

*Counsel for Defendant Wells Fargo Bank, N.A.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of July, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing system:

Albert H. Mickler, Esq.
5452 Arlington Expressway
Jacksonville, FL 32211
ahm-planman@juno.com
*Counsel for Plaintiffs*

        /s/ Kristin A. Gore
        Kristin A. Gore
        kgore@cfjblaw.com
        Florida Bar No. 59090