## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

THOMAS A. TRAVER and REGINA
LIST TRAVER,

      Plaintiffs,

v.                                                              Case No. 3:14-cv-895-J-32MCR

WELLS FARGO BANK, N.A.,

      Defendant.

_____

## O R D E R

Plaintiffs Thomas and Regina Traver allege that Defendant Wells Fargo Bank, N.A. breached an agreement for a mortgage loan modification (Count One) and fraudulently induced them to enter into the agreement by concealing its true intent to proceed with foreclosure proceedings against their property (Count Two). [1] The Travers now seek partial summary judgment in their favor based upon Wells Fargo's failure to halt the foreclosure sale despite offering the modification.[2] (Doc. 27.) Wells

---

[1] The Travers also alleged that Wells Fargo violated the Florida Deceptive and Unfair Trade Practice Act ("FDUTPA") based upon the same conduct underlying the fraudulent inducement claim. The Court dismissed the Travers' FDUTPA claim (Count Three) with prejudice upon finding that FDUTPA, by its very terms, does not apply to banks like Wells Fargo that are regulated by federal agencies. (Doc. 32.)

[2] The Travers' position is largely rooted in a consent judgment entered into between the United States Government and the Attorneys General of several states in United States v. Wells Fargo Bank, N.A., 891 F. Supp. 2d 143 (D.D.C. 2012). As part of the consent judgment, Wells Fargo agreed to comply with certain servicing standards related to foreclosure. (Doc. 27 at 2-3; see Doc. 27-3 at 21.) The Travers' assertion that they are not relying upon the consent judgment to establish liability, but rather to show Wells Fargo's then-existing state of mind to delay foreclosure sales

Fargo seeks final summary judgment in its favor, asserting that the Travers' claims fail as a matter of law because they did not follow the requisite procedures to accept the modification and therefore no agreement was formed. (Doc. 40.) On October 30, 2015, the Court heard oral argument on all pending motions, the record of which is incorporated herein.

## I.      BACKGROUND

The underlying facts preceding the modification offer are undisputed. Thomas Traver purchased the real property located at 10515 West Osprey Nest Drive in Jacksonville, Florida on April 30, 1998, and on December 31, 2008, HSBC Bank, U.S.A. National Trust Company initiated foreclosure proceedings against the property.[3] (Doc. 15 at 2-3.) While the state foreclosure proceedings were ongoing, Mr. Traver filed for Chapter Thirteen Bankruptcy in United States Bankruptcy Court for the Middle District of Florida on May 4, 2012. According to the Travers' Amended Complaint, Mr. Traver pursued bankruptcy in hopes of obtaining a loan modification. (Id. at 3.)

On January 24, 2013, Wells Fargo sent a letter to Mr. Traver through his bankruptcy attorney, Bryan Mickler, informing him that a loan modification was approved. (Id. at 4-5; Doc. 15-2 at 13-14.) The letter also provided instructions as to the next steps if Mr. Traver chose to accept the terms of the modification. (Doc. 15 at 4-5; Doc. 15-2 at 13-14.) Consistent with the letter's directions, Mr. Traver filed a

_____

upon offering modifications, cannot circumvent the jurisdictional, procedural, and other bars to their efforts to enforce that judgment in this Court. (Doc. 27 at 4, 8.)

[3] Wells Fargo is the servicer of the HSBC mortgage.

motion for approval of the modification in the Bankruptcy Court on January 29, 2013, which was granted on April 10, 2013. (Doc. 15 at 5, 7; Doc. 15-2 at 15-17.) The Bankruptcy Court held that the loan modification superseded HSBC's proof of claim in the bankruptcy case. (Doc. 15-2 at 35.) Prior to the Bankruptcy Court's approval, Wells Fargo sent a letter dated March 20, 2013 to Mr. Traver stating that the mortgage modification was approved subject to certain conditions[4] and specifying the terms of the modified loan. (Doc. 15 at 6; Doc. 15-2 at 20-21.) Accompanying the letter

---

[4] The letter states, in pertinent part:

> We are pleased to inform you your loan modification is approved subject to the following:

> Receipt of a title report (if required) reflecting that the mortgage/deed of trust is, and will remain in, first lien position. . . .

> Within 15 business days and if clear title can be obtained, the modification agreement will follow in the mail. The agreement will be sent to you by overnight mail and contain the terms of the modification and changes to your original Note. Please note the agreements must be signed, notarized, and returned to us within 5 business days of receipt. . . .

> A payment of $0.00, which is due when the executed agreement is returned. . . .

> Once this payment and the modification agreement are received, the estimated modified payment of $873.08 will be due on 04/01/2013 and the same day of each month thereafter. . . .

(Doc. 15-2 at 20 (emphasis in original).) Although the letter states that the modification agreement would "follow in the mail," it is undisputed that the agreement was sent to Mr. Traver simultaneous with the March 20, 2013 letter. See, e.g., Doc. 15 at 6 ¶¶ 25-26 (stating modification agreement accompanied March 20, 2013 letter) and Doc. 40 at 2 (noting the Travers were "confronted with evidence that they received a loan modification agreement to sign and return to Wells Fargo on March 20, 2013").

was a loan modification agreement dated January 24, 2013 that was to be executed by Mr. Traver. (Doc. 15 at 6; Doc. 15-2 at 22-29.)

While the bankruptcy proceedings and the parties' efforts to finalize the mortgage modification continued, the state court foreclosure proceedings progressed. The state court entered a final judgment of foreclosure on April 3, 2013, and the property was scheduled for sale on May 28, 2013. (Doc. 15-2 at 41-46.) On May 14, 2013, the state court clerk issued a notice of the upcoming foreclosure sale and HSBC moved to cancel the sale. (Doc. 15 at 7; Doc. 15-2 at 47-48, 49.) Although the motion for cancellation stated that HSBC "continues to review all loss mitigation options that may be available to resolve the instant foreclosure without proceeding to [the] foreclosure sale," the motion did not mention that Wells Fargo had approved a loan modification, the Bankruptcy Court's approval of the mortgage modification agreement, or that Mr. Traver made three payments which were received by Wells Fargo. (Doc. 15 at 8-9; Doc. 15-2 at 49.) The state court denied the motion to cancel the sale on May 16, 2013, the foreclosure sale proceeded on May 28 as scheduled, and the property was sold to a third party, Blue River Homes, LLC, which subsequently evicted the Travers. (Doc. 15 at 10.)

The Travers allege that at the time they were evicted, the property's market value exceeded $207,000.00 and the market value of the furnishings exceeded $21,000.00. (Id.) The Travers claim entitlement to these amounts as damages. Wells Fargo denies the Travers' allegations and asserts seventeen affirmative defenses, most notably that the claims are barred by res judicata and the Florida Banking Statute of

Frauds. (Doc. 42; Fla. Stat. § 687.0304(2).) The parties have now filed cross motions for summary judgment, which are fully briefed.

## II.   STANDARD OF REVIEW

Summary judgment is proper "when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1314 (11th Cir. 2011); Fed. R. Civ. P. 56(a), (c). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The movant bears the burden of showing the absence of dispute as to material facts, and upon such a showing the burden shifts to the non-moving party to establish that a genuine dispute exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 324 (1986).

## III.   ANALYSIS

The Travers' Amended Complaint acknowledges a number of conditions precedent to the creation of a contract modifying the mortgage. Specifically, the January 24, 2013 loan modification letter quoted in the Travers' pleadings and motion for partial summary judgment provides:

> If the terms meet your approval, the next step is to file a petition with the Bankruptcy Court to gain their consent to modify the first mortgage. Your client will need to continue to make their trial period payments if applicable while we are waiting on consent from the Court. When you receive written consent, please forward it to my attention. Once received, we will send the loan documents to your attorney

for original signatures. We will then withdraw any proof of
claim in this case and process the modification as noted.

(Doc. 15 at 4.) The parties do not dispute that Mr. Traver filed a motion for consent to
modify the loan in Bankruptcy Court or that Wells Fargo received three payments
between March and May 2013, and the Travers contend this demonstrates their
acceptance of the loan modification terms. (Id. at 6-7; see also Doc. 15-2 at 30-34.)

The parties' factual accounts diverge as to what transpired after the Travers'
receipt of the March 20, 2013 loan modification offer letter and agreement. For the
first time in their Amended Complaint, the Travers allege that Mr. Traver performed
all conditions precedent, including that he manifested his acceptance by "furnishing
the executed Loan Modification Agreement (Mortgage) with Addendums to Wells
Fargo." (Doc. 15 at 11-12.)[5] Specifically, the Travers allege that Mr. Traver signed all
necessary documents at the offices of his bankruptcy attorney, his signature was
notarized, and the documents "were returned to Wells Fargo through the Fed Ex
return envelope that is usually supplied by Wells Fargo when it sends to home owners
a loan modification agreement (mortgage) with addendums."[6] (Id. at 6.) Wells Fargo
asserts, however, that its own internal records and records from FedEx demonstrate
that the return envelope was never used to return the documents, and the Travers

---

[5] The Travers did not so allege in their original complaint filed in this action
(Doc. 2), or in any of their pleadings in the first federal case (see Traver v. Wells Fargo
Bank, N.A., No. 3:13-cv-841-J-39JRK) or Bankruptcy Court (see In re Traver, No. 3:12-
bk-3054-JAF).

[6] At the October 30 hearing, however, the Travers stated that they may have
returned the agreement by other means, such as a different FedEx envelope.

were advised during a telephone call on April 3, 2013 that Wells Fargo had not received the signed agreement. (See Doc. 36-1 at 2; Doc. 35-2 at 5; Doc. 43-3 at 49.)

Whether the Travers actually executed and returned the modification agreement is a question of fact for the jury, and therefore summary judgment in favor of the Travers is inappropriate. Assuming arguendo that Mr. Traver signed the agreement and it was returned to Wells Fargo, the Court next turns to whether, if true, such action would be sufficient to form a contract. For the reasons that follow, the Court answers that question in the affirmative, and summary judgment in Wells Fargo's favor is therefore also inappropriate.

Under Florida law, "[t]o prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009) (citing St. Joe Corp. v. McIver, 875 So. 2d 375, 381 (Fla. 2004)). In addition, loan modification agreements must satisfy section 687.0304, Florida Statutes, commonly known as the Banking Statute of Frauds, which provides that "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." Fla. Stat. § 687.0304(2). This statute "'was enacted to protect lenders from liability for actions or statements a lender might make in the context of counseling or negotiating with the borrower which the borrower construes as an agreement, the subsequent violation of which is actionable against the lender.'" Dixon v. Countrywide Fin. Corp., 664 F. Supp. 2d 1304, 1309 (S.D. Fla. 2009) (quoting

7

Brenowitz v. Cent. Nat'l Bank, 597 So. 2d 340, 342 (Fla. 2d DCA 1992)). Consistent with that purpose, "[t]he agreement by a creditor to take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies under prior credit agreements, or extending installments due under prior credit agreements" is insufficient to "give rise to a claim that a new credit agreement is created" unless such agreement satisfies the express requirements of the statute. Fla. Stat. § 687.0304(3). Permanent loan modification agreements are credit agreements within the meaning of the statute. See, e.g., Vargas v. Deutsche Bank Nat'l Trust Co., 104 So. 3d 1156, 1168 (Fla. 3d DCA 2012).

Although the Travers assert that the Banking Statute of Frauds does not bar enforcement of the modification agreement because they have fully performed, it is unclear whether performance applies to remove a case from the banking statute of frauds in actions at law. Compare Elsberry v. Sexton, 61 Fla. 162, 166 (1911); Dwight v. Tobin, 947 F.2d 455, 459, 460 (11th Cir. 1991); Ioselev v. Schilling, No. 3:10-cv-1091-J-34MCR, 2012 WL 6928003, at *5 (M.D. Fla. Oct. 30, 2012), report and recommendation adopted as modified by 2013 WL 271711 (M.D. Fla. Jan. 24, 2013) (Howard, J.); and Ala v. Chesser, 5 So. 3d 715, 719-20 (Fla. 1st DCA 2009) (noting that under Florida law performance does not remove an agreement from the general statute of frauds where plaintiffs seek legal, rather than equitable, relief) with J Square Enterprises v. Regner, 734 So. 2d 565, 566 (Fla. 5th DCA 1999) (acknowledging that full performance by one party and acceptance by another removes oral agreements from banking statute of frauds) and Brake v. Wells Fargo Fin. Sys.

Florida, Inc., No. 8:10-cv-338-T-33TGW, 2011 WL 6719215, at *8 (M.D. Fla. Dec. 5, 2011) (Wilson, J.) (same, in action seeking both equitable relief and damages), report and recommendation adopted, 2011 WL 6412430 (M.D. Fla. Dec. 21, 2011) (Covington, J.). The Court need not decide the motion on this basis, however, because construing the evidence in the light most favorable to the Travers as the Court must when considering Wells Fargo's motion for summary judgment, the aggregation of documents potentially demonstrates the existence of an executed loan modification agreement, which allows the case to proceed.[7]

Early decisions of the Florida Supreme Court contemplate the aggregation of writings to evidence a contract that satisfies the general statute of frauds. See Meek v. Briggs, 80 Fla. 487, 489 (Fla. 1920) ("Telegrams or letters to the writer's agent may constitute adequate memorandum of the contract, and several telegrams, letters, or other writings signed by the party to be charged may be considered together in supplying the essential elements of such memorandum as will satisfy the statute [of frauds]" provided that "there must be some reference to them in the signed writings of such party"); Alton Beach Realty Co. v. Henderson, 92 Fla. 689, 690 (Fla. 1926) (aggregation of writings may determine whether valid or enforceable contract existed for conveyance of real estate). Courts in the Middle District of Florida and other federal courts have continued to apply these principles to Florida's general statute of frauds. See, e.g., Sleit v. Ricoh Corp., No. 8:07-cv-724-T-23TBM, 2008 WL 4826113, at *4 (M.D.

---

[7] If appropriate, the Court could revisit this issue at a later stage of the proceedings.

Fla. Nov. 4, 2008) (Merryday, J.) ("Further, [f]or purposes of the statute of frauds, several writings, only one of which is signed by the debtor, may be aggregated to satisfy the statute provided that the signed writing expressly or implicitly refers to the unsigned document.'") (quoting <u>Kolski ex rel. Kolski v. Kolski</u>, 731 So. 2d 169, 171-72 (Fla. 3d DCA 1999)); <u>Provident Bank v. Taylor Creek Enters., LLC</u>, No. 3:09cv36-MCR/EMT, 2010 WL 298300, at *3 (N.D. Fla. Jan. 19, 2010) ("[U]nder the statute of frauds, even an implicit or implied reference to other documents permits the court to consider them in the aggregate for purposes of meeting the statute.") (citing <u>Kolski</u>, 731 So. 2d at 171-72).

Florida state courts and other federal courts applying Florida law have also extended this rule by aggregating documents to determine whether there is a writing sufficient to satisfy Florida's Banking Statute of Frauds. In <u>Collins v. Citrus National Bank</u>, the plaintiff presented a letter from the bank and two documents, a hypothecation agreement and assignment, purportedly signed by the plaintiff shortly after he received the bank letter, as evidence of an oral agreement. 641 So. 2d 458, 459 (Fla. 5th DCA 1994). The trial court dismissed the relevant counts for failure to satisfy the Banking Statute of Frauds. The appellate court concluded that the bank letter satisfied the requirements of the statute that there be a writing and that it expresses consideration and sets forth the relevant terms, but rejected the contention that the letter alone satisfied the Banking Statute of Frauds because the plaintiff affixed his signature to the letter "just prior to filing suit, and long after the credit transaction" and "the statute contemplates that the writing should be signed by both parties as

part of the same transaction." Id. However, the court acknowledged that "[w]here two or more documents are executed by the same parties, at or near the same time, in the course of the same transaction, and concern the same subject matter, they will be read and construed together." Id. Thus, because the other documents were signed by the plaintiff, if the facts established that "the letter, the hypothecation agreement, and the assignment were all part of the same transaction," then, even absent his signature on the bank letter, "Collins' signatures on the assignment and hypothecation agreement would satisfy the signature requirement of the statute." Id. Finding that the plaintiff had sufficiently alleged an agreement that complied with the Banking Statute of Frauds, the court reversed the dismissal of the relevant counts and remanded the case for further proceedings. Id. at 460.

In The Mark Andrew of the Palm Beaches, Ltd. v. GMAC Commercial Mortgage Corporation, the borrowers' suit for, inter alia, breach of contract was dismissed based in part on the absence of an agreement that satisfied Florida's Banking Statute of Frauds. 265 F. Supp. 2d 366 (S.D.N.Y. 2003) (applying Florida law), aff'd, 96 F. App'x 750 (2d Cir. 2004). In that case, the plaintiffs alleged that a contract existed based on oral promises and several documents.[8] Mark Andrew, 365 F. Supp. 2d at 375-76. While the plaintiffs asserted that the closing documents were executed and returned

---

[8] The documents were a promissory note, mortgage and security agreement, environmental indemnity agreement, assignment of license permits and contracts, guaranty of recourse obligations to borrower, debt servicer reserve agreement, and assignment of interest rate cap and security agreement, all of which constituted the closing documents; a term sheet; and various internal records of GMAC. Mark Andrew, 365 F. Supp. 2d at 375-76, 380.

to the lender, the parties disputed whether GMAC actually received and signed the documents and therefore whether an agreement actually existed. Id. at 376. The court viewed the documents in the aggregate for satisfaction of the Banking Statute of Frauds, but determined they did not create an enforceable contract because the plaintiffs failed to show that any of the documents contained a contractual obligation or promise to fund a loan, and it was undisputed that no money was actually loaned. Id. at 380-81. The documents at issue here are distinguishable.

There is no evidence that Wells Fargo actually signed the mortgage modification agreement. However, applying the aggregation principles recognized by Florida and federal courts, the March 20, 2013 letter from Wells Fargo (which attached the mortgage modification agreement) and the mortgage modification agreement dated January 24, 2013 that was allegedly signed by Mr. Traver on April 1, 2013, taken together, provide the legal description of the property at issue (Doc. 15-2 at 23); specify the terms of the modified loan (id. at 21, 22-24); and purportedly contain the notarized signature of Thomas Traver (id. at 26-29) and the electronic signature of a "Home Preservation Specialist" employed by Wells Fargo Home Mortgage (id. at 21). Taken together, if the Travers can prove they sent the signed modification agreement to Wells Fargo, these documents would satisfy Florida's Banking Statute of Frauds.

Moreover, the existence of the March 20, 2013 letter and modification agreement also distinguish this case from some other Florida and federal cases addressing whether plaintiffs' claims based on oral promises were barred by Florida's Banking Statute of Frauds. See, e.g., Brake, 2011 WL 6719215; Bowen v. Wells Fargo

Bank, N.A., No. 2:11-cv-91-FtM-29SPC, 2011 WL 3627320 (M.D. Fla. Aug. 17, 2011) (Steele, J.). Decisions finding that such claims are barred by the Banking Statute of Frauds are consistent with legislative intent that "Section 687.0304 'restrict[ ] the ability of the borrower to bring suit upon <u>oral</u> credit agreements….'" <u>Collins</u>, 641 So. 2d at 459 (quoting House of Representative of Florida, Comm. on Commerce Final Staff Analysis & Economic Impact Statement of 1989 (1989)) (alteration and emphasis added).

Even <u>Vargas</u>, <u>supra</u>, a case relied on by Wells Fargo for its proposition that a loan modification agreement signed only by the borrower is unenforceable under the Banking Statute of Frauds, is different. In that case, the plaintiff expressly rejected the loan modification offer twice and then, three months after the modification offer had expired,[9] alleged that the parties had agreed to the modification in open court on the same terms initially offered. 104 So. 3d at 1166-67. The court determined there was no evidence that the parties ever reached a binding agreement, and the alleged agreement was unenforceable because it was not signed by the bank or servicer. <u>Id.</u> at 1168-69. Here, Mr. Traver did not expressly reject the offer and instead purportedly signed the agreement provided by Wells Fargo at the time and under the same terms offered. At best, <u>Vargas</u> demonstrates that Florida courts disagree on whether the absence of the bank's signature on the purported agreement, in and of itself, is fatal

---

[9] Although here, as in <u>Vargas</u>, it is undisputed that Mr. Traver did not execute the agreement within the 5 day specified time period (Doc. 15-2 at 20), counsel conceded at the October 30 hearing that Wells Fargo probably would have overlooked the untimely return and proceeded with the modification had it received the signed agreement.

to a plaintiff's claim. Cf. with Collins, supra (bank letter plus documents signed by plaintiff taken together would satisfy Banking Statute of Frauds).

Accordingly, taking the allegations in their Amended Complaint as true and aggregating the March 20, 2013 letter signed by Wells Fargo (which referenced and attached the loan modification agreement) and the modification agreement allegedly signed by Mr. Traver, the Travers have sufficiently alleged the existence of an agreement that satisfies Florida's Banking Statute of Frauds. Of course, whether Mr. Traver actually executed and returned the modification documents remains a question of fact for the jury.

Nor does Wells Fargo's assertion that the Travers' claims are barred by res judicata warrant summary judgment. Based on the pleadings and arguments at the October 30 hearing, it is unclear whether the Travers could have litigated their claims during the state foreclosure proceedings, as even Wells Fargo's motion to cancel the foreclosure sale acknowledged that efforts to resolve the matter were ongoing. See Doc. 15-2 at 49 (stating that HSBC "continues to review all loss mitigation options that may be available to resolve the instant foreclosure without proceeding to foreclosure sale."). Moreover, the Travers' claims arise out of Wells Fargo's alleged breach of the loan modification agreement and not directly out of the foreclosure itself; thus, although the Travers' claims stem from the foreclosure, they are separate claims. Bowen, 2011 WL 3627320, at *3-4 (dismissal based on res judicata inappropriate where the plaintiff's federal case did not advance the same causes of action as state

foreclosure case, and although federal claims stemmed from state foreclosure, they were separate claims based on alleged oral promise rather than foreclosure itself).

Finally, considering the Travers' current position that Wells Fargo actually sent Mr. Traver a permanent loan modification agreement, there is no basis for the Travers' fraudulent inducement claim (Count Two). Therefore, the Court will grant summary judgment on Count Two.

## IV. CONCLUSION

The facts of this case are largely undisputed and, where they are not, the Court has viewed the evidence in the light most favorable to the non-moving party with respect to both the Travers' motion for partial summary judgment and Wells Fargo's motion for final summary judgment. Finding a genuine issue of material fact with regard to Mr. Traver's alleged execution and return of the mortgage modification documents, summary judgment is inappropriate as to the breach of contract claim (Count One).[10]

Because this claim survives summary judgment, the Court now raises an additional issue <u>sua</u> <u>sponte</u>. Upon review of the docket, attorneys Bryan K. Mickler and Albert H. Mickler of the law firm Mickler & Mickler, 5452 Arlington Expy, Jacksonville, Florida 32211, are both identified as counsel of record for the Travers. In light of the affidavits filed by Bryan K. Mickler and Carolynn Mickler [11] in

---

[10] The Court has also considered the parties' arguments with respect to the motions to strike the Travers' and Micklers' affidavits and the expert affidavit, but will reserve ruling on those matters until a later date.

[11] Carolyn Mickler is not an attorney but is employed as the Office Manager of the Mickler & Mickler law firm. (Doc. 43-4 at 6.)

opposition to Wells Fargo's motion for summary judgment, it is unclear whether they are necessary witnesses in the case and, if so, whether the Rules Regulating the Florida Bar or other applicable ethics rules permit attorney Bryan K. Mickler or the Mickler & Mickler law firm to continue representing the Travers in this action. The parties are therefore directed to file supplemental briefing addressing whether there is a conflict and, if so, how this case may proceed.

Accordingly, it is hereby

**ORDERED**:

1.     Travers' Motion for Partial Summary Judgment as to Count One (Doc. 27) is **DENIED**.

2.     Defendant, Wells Fargo Bank, N.A.'s Motion for Final Summary Judgment (Doc. 40) is **DENIED** as to Count One and **GRANTED** as to Count Two.

3.     No later than **January 11, 2016**, the parties are directed to file supplemental briefs, limited to **five (5) pages** each, addressing the potential conflict of attorney Bryan K. Mickler and the Mickler & Mickler law firm, and how the Court should proceed with this matter.

4.     The Court urges the parties to settle this case. This case is once again referred to the Honorable Monte C. Richardson for a settlement conference. The parties should contact Judge Richardson's chambers to schedule the settlement conference.

**DONE AND ORDERED** in Jacksonville, Florida the 29th day of December, 2015.

TIMOTHY J. CORRIGAN
United States District Judge

ab
Copies:

The Honorable Monte C. Richardson
United States Magistrate Judge

Counsel of record